IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TARIQ MUSAWWIR, # 40233-086, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-cv-288-MJR |
| | ) |
| FEDERAL BUREAU of PRISONS, | ) |
| ERIC HOLDER, | ) |
| CHARLES E. SAMUELS, JR., | ) |
| SCOTT D. DODRILL, J.S. WALTON, | ) |
| S. CARDONA, M. NEUMANN, | ) |
| H. RIVAS, and A. CRUITT, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

　　Plaintiff, currently incarcerated at the United States Penitentiary at Marion ("Marion"), brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He also asserts claims under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. Plaintiff is serving a 115 month sentence for conspiracy to distribute drugs from within a correctional facility (Doc. 1-1, p. 2).

　　In his complaint, Plaintiff alleges that he has been confined since May 2011 in Marion's Communications Management Unit ("CMU"), where he is housed separately from general population inmates and his written, telephonic, and electronic mail communications with persons outside the prison are significantly restricted (Doc. 1, pp. 6-9). Further, in-person visitation for CMU inmates is very limited, as is their access to educational and recreational

opportunities, in contrast to the privileges enjoyed by general population inmates. He contends that the CMU visitation restrictions are far more harsh than those faced by prisoners in the federal "supermax" prison in Florence, Colorado. As a result of the CMU conditions, Plaintiff's relationships with his minor children and other family members have been irreparably harmed beyond what would be expected by incarceration in general population (Doc. 1, p. 6).

Plaintiff was assigned to the CMU as a result of his offense conduct, and was notified that his placement would be "reviewed regularly by [his] unit team" (Doc. 1, p. 10). However, the unit team has informed him that neither they nor the Warden (Defendant Walton) has authority to transfer prisoners out of the CMU (Doc. 1, p. 11). Instead, decisions on CMU placement are made in the Central Office of the Federal Bureau of Prisons ("BOP"), where he alleges Defendant Dodrill is the responsible official, under the ultimate authority of Defendant Attorney General Holder (Doc. 1, pp. 4-5). Not only was Plaintiff not afforded any advance notice or opportunity to be heard prior to his CMU placement, he has no access to any meaningful review process to challenge his continued assignment there. He requests injunctive relief in the form of policy changes within the BOP to put into place a pre-transfer notice and hearing process for prisoners selected for CMU placement, as well as a meaningful program review procedure for inmates seeking transfer out of the CMU (Doc. 1, pp. 22-23).

Plaintiff, like many other CMU inmates, is a practicing Muslim. Outside of the 30 days of Ramadan when daily group prayer is permitted, CMU policy allows Muslim prisoners to engage in group prayer only one time per week, for Friday Jum'ah services (Doc. 1, pp. 13-14). Congregate prayer at other times is prohibited, which impairs Plaintiff's ability to practice a sincere tenet of his school of Islam which mandates group prayer five times per day, in the Arabic language, whenever possible. Plaintiff is subject to disciplinary sanctions if he were to

violate the group prayer prohibition. Also banned is the teaching, learning, or speaking of the Arabic language, including praying in Arabic. He contends that these policies violate his First Amendment rights, as well as RFRA and RLUIPA. He seeks injunctive relief pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702, 706, to require Defendants Holder and Samuels (BOP Director), and Defendant BOP to allow him to practice congregate prayer at least five times daily, and to permit him to teach, learn, speak, and pray in the Arabic language for religious purposes (Doc. 1, pp. 23).

Plaintiff also contends that Defendants Cardona, Neumann, and Rivas (all CMU staff) have repeatedly and intentionally opened Plaintiff's properly addressed incoming legal mail from his attorney of record (Doc. 1, pp. 15-16). Plaintiff complained to former Warden Roal, but the problem has continued. Further, Defendants Rivas and Cruitt (BOP Intelligence Analyst) placed an official "block" on Plaintiff's requests to have contact with six longtime friends, with no notice or opportunity to be heard on the matter. These individuals were not involved in any of Plaintiff's criminal activity. He seeks injunctive relief and damages in connection with this claim.

Finally, Defendants Walton, Cardona, Rivas, Neumann, and Cruitt have retaliated against Plaintiff for filing grievances (Doc. 1, pp. 18-22). Their retaliatory actions include rejecting most of Plaintiff's incoming and outgoing email correspondence; restricting his email privileges without justification or hearing; issuing a false incident report (which resulted in sanctions) against him for attempting to contact two people after Defendants Rivas and Cruitt had approved the addition of those individuals to Plaintiff's contact list; and delaying paperwork for the disciplinary process on other incident reports in order to keep Plaintiff in administrative segregation for extended periods of time. Defendants Rivas, Neumann, and Cardona told

Plaintiff that his privileges might be restored if he were to quit filing grievances (Doc. 1, pp. 19-20).  Again, Plaintiff seeks injunctive relief and damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint.  Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal claims:

**Count 1:**  Due process claim for placement and retention in the CMU, against Defendants Holder and Dodrill;

**Count 2:**  Unlawful restriction of Plaintiff's right to engage in group prayer in the Arabic language as well as teach, learn, and speak Arabic for religious purposes, under the First Amendment, RFRA, and APA, against Defendants Holder and Samuels;

**Count 3:**  Unconstitutional opening of Plaintiff's incoming legal mail, against Defendants Cardona, Neumann, and Rivas;

**Count 4:**  Unconstitutional restriction of Plaintiff's right to communicate with individuals in the community, against Defendants Rivas and Cruitt;[1] and

**Count 5:**  Retaliation claim against Defendants Walton, Cardona, Neumann, Rivas, and Cruitt.[2]

However, Plaintiff has failed to state a viable claim under RLUIPA **(Count 6)** for the infringements on his religious practices.  RLUIPA applies to state and local governments and

---

[1] Counts 3 and 4 were both included in "Claim Three" of Plaintiff's complaint (Doc. 1), but are designated as separate counts herein for the convenience of the Court.  The parties and the Court will use the designations above in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

[2] Count 5 was designated as "Claim Four" in Plaintiff's complaint (Doc. 1).

to those acting under color of state law.  *See* 42 U.S.C. § 2000cc-5(4).  It does not apply to federal prisons.  *Id.* at § 2000cc-1.  Therefore, Count 6 shall be dismissed with prejudice.

Plaintiff named the Federal Bureau of Prisons as a Defendant in connection with each of his claims.  However, neither the federal government nor any of its agencies is amenable to suit in a *Bivens* action.  *See FDIC v. Meyer*, 510 U.S. 471, 475; 483-86 (1994) (sovereign immunity shields the federal government from suit absent a waiver; *Bivens* action permits suit only against an individual who is an agent of the federal government).  Accordingly, the Bureau of Prisons shall be dismissed from the action with prejudice.

Finally, Plaintiff has failed to state a claim against Defendants Samuels or Walton for the alleged violations in Counts 3 and 4.  Plaintiff does not claim that these Defendants were personally involved in either the opening of his legal mail or the imposition of the ban on contact with certain individuals.  Nor does he indicate that he made either of these Defendants aware of the alleged misconduct or requested their intervention, outside of their possible routine review of grievances.  Instead, he seeks to hold them liable because of their supervisory responsibilities over Defendants Cardona, Neumann, Rivas, and/or Cruitt.  However, the doctrine of *respondeat superior* is not applicable to civil rights actions.  *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).  To clarify, Plaintiff may proceed on his claim against Defendant Samuels in Count 2 and Defendant Walton in Count 5.  Count 3 shall proceed only against Defendants Cardona, Neumann and Rivas, and Count 4 shall proceed only against Defendants Rivas and Cruitt.

**Disposition**

**COUNT 6** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  Defendant **FEDERAL BUREAU of PRISONS** is **DISMISSED** from

this action with prejudice.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **HOLDER, DODRILL, SAMUELS, CARDONA, NEUMANN, RIVAS, CRUITT** and **WALTON**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **HOLDER, DODRILL, SAMUELS, CARDONA, NEUMANN, RIVAS, CRUITT** and **WALTON** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[3] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk

---

[3] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 16, 2013**

s/ MICHAEL J. REAGAN
United States District Judge
